**PENNSYLVANIA STATE POLICE, Petitioner**

v.

**John PAULSHOCK, Respondent.**

**Pennsylvania State Police, Petitioner**

v.

**Rodney Reed, Respondent.**

Commonwealth Court of Pennsylvania.

No. 2453 C.D. 2000 Argued June 6, 2001.

No. 1068 C.D. 2000 Submitted on Briefs Oct. 10, 2001.

Decided Nov. 20, 2001.

Joanna N. Reynolds, Harrisburg, for petitioners.

Jarrod Tranguch, Drums, for respondent, John Paulshock.

Jarad W. Handelman, Hummelstown, for respondent, Rodney Reed.

Before DOYLE, President Judge, COLINS, Judge, McGINLEY, Judge, SMITH, PELLEGRINI, Judge, KELLEY, Judge and LEADBETTER, Judge.

Opinion by Judge LEADBETTER.

Before the court are petitions for review filed by the Pennsylvania State Police (PSP) from decisions by the Office of Attorney General holding that orders of the court of common pleas had relieved the various respondents of disability from purchasing, owning or using firearms. The disability arose from operation of Section 6105 of the Uniform Firearms Act (Uniform Act), 18 Pa.C.S. § 6105, and Section 922 of the Federal Gun Control Act of 1968 (Federal Act), 18 U.S.C. § 922. We are called upon to interpret both the statutory language and the terms of these court orders.

Rodney Reed's firearms disability under Section 6105 of the Uniform Act and under Section 922 of the Federal Act occurred as a result of his conviction in 1966 for malicious mischief and unlawfully carrying a firearm.[1] He served six weeks on sentences of three to twenty-four months. In 1996, when Reed sought to acquire a handgun from a friend, the local sheriff told him that his 1966 conviction disqualified him from gun ownership. In May of 1997, Reed petitioned common pleas pursuant to Section 6105(d)[2] of the Uniform Act for relief from firearms disability. No objection to the petition having been entered by the Dauphin County District Attorney, common pleas granted Reed's request in an order stating, in pertinent part, as follows:

> [I]t is hereby Ordered that Defendant's Petition for Relief From Firearms Disability is GRANTED pursuant to 18 Pa. C.S. 6105(d). Petitioner RODNEY E. REED is therefore permitted to seek application for reinstatement of his firearm privileges, as his prior criminal history is hereby expunged for that purpose.

*Commonwealth v. Reed,* (Dauphin County Nos. 190–3S–66 and 192–3S–66, dated August 29, 1997).

After receiving common pleas' order, Reed applied to the local sheriff for a

---

1. Reed testified before the administrative law judge that when he was twenty-two years old he shot out a street light on a dare while he was hunting skunks with his brother and cousin. He used a gun that he had purchased in Delaware and neglected to register in Pennsylvania.

2. Section 6105(d) provides for an exemption from disability by stating, in pertinent part, as follows:

> (d) Exemption.—A person who has been convicted of a crime specified in subsection (a) or (b) ... may make application to the court of common pleas of the county where the principal residence of the applicant is situated for relief from the disability imposed by this section upon the possession, transfer or control of a firearm. The court shall grant such relief if it determines that any of the following apply:

> . . . .
> (3) Each of the following conditions is met:
> (i) The Secretary of the Treasury of the United States has relieved the applicant of an applicable disability imposed by Federal law upon the possession, ownership or control of a firearm as a result of the applicant's prior conviction, except that the court may waive this condition if the court determines that the Congress of the United States has not appropriated sufficient funds to enable the Secretary of the Treasury to grant relief to the applicants eligible for relief.
> (ii) A period of ten years, not including any time spent in incarceration, has elapsed since the most recent conviction of the applicant of a crime enumerated in subsection (b) or a felony violation of The Controlled Substance, Drug, Device and Cosmetic Act.
> 18 Pa.C.S. § 6105(d).

concealed weapon permit. The weapon's permit was initially denied but later granted after Reed supplied a copy of common pleas' order to the sheriff.[3] Thereafter, Reed purchased two handguns. However, in December of 1998, when Reed attempted a subsequent purchase from a friend, the local gun dealer refused to complete the paperwork for the transfer of ownership. Based on a records check pursuant to Section 6111.1(b)[4] of the Uniform Act, PSP reported that Reed was disqualified from possessing a firearm by Section 922(g) of the Federal Act, due to his 1966 conviction for unlawfully carrying a firearm, a crime punishable by more than two years imprisonment. Reed challenged the purchase denial and PSP confirmed its decision. Thereafter, Reed appealed to the Office of Attorney General (OAG), which assigned an administrative law judge (ALJ) for a hearing. The ALJ determined that common pleas' order fully removed firearms disability. However, the ALJ refused to order PSP to enforce the complete expungement of Reed's criminal record pursuant to Section 9122 of the Criminal History Records Information Act, 18 Pa.C.S. § 9122.[5]

John Paulshock's firearms disability occurred as a result of his conviction in 1960 for burglary, arson, larceny and malicious mischief. He served three years on consecutive sentences of one to five years and has since been law abiding. In 1997, desiring to purchase a gun for hunting, Paulshock petitioned the court of common pleas for relief from firearms disability; he voluntarily limited his request to long guns for sport and recreation. Following a hearing, at which the Luzerne County District Attorney entered no objection to Paulshock's petition, common pleas granted the request and entered an order stating, in pertinent part:

3. Pursuant to Section 6109 of the Uniform Act, the local sheriff investigates the applicant's criminal record following the procedures set forth in Section 6111 (relating to firearm ownership) and determines whether a license to carry a concealed weapon shall be issued.

4. The PSP is obligated to review criminal history records pursuant to Section 6111.1 of the Uniform Firearms Act, which provides, in pertinent part, as follows:

　(b) Duty of Pennsylvania State Police.—

　　(1) Upon receipt of a request for a criminal history … of the potential purchaser or transferee, the Pennsylvania State Police shall immediately during the licensee's call or by return call forthwith:

　　(i) review the Pennsylvania State Police criminal history and fingerprint records to determine if the potential purchaser or transferee is prohibited from receipt or possession of a firearm under Federal or State law.

18 Pa.C.S. § 6111.1(b).

5. Section 9122 of the Criminal History Record Information Act provides, in pertinent part, as follows:

　(a) Specific proceedings.—Criminal history record information shall be expunged in a specific criminal proceeding when:

　　(1) No disposition has been received or, upon request for criminal history record information, no disposition has been recorded in the repository within 18 months after the date of arrest and the court of proper jurisdiction certifies to the director of the repository that no disposition is available and no action is pending. Expungement shall not occur until the certification from the court is received and the director of the repository authorizes such expungement; or

　　(2) A court order requires that such non-conviction data be expunged.

　(b) Generally. Criminal history information may be expunged when:

　　(1) An individual who is the subject of the information reaches 70 years of age and has been free of arrest or prosecution for ten years following final release from confinement or supervision; or

　　(2) An individual who is the subject of information has been dead for three years.

18 Pa.C.S. § 9122.

Petitioner shall be entitled to purchase, possess, and use long guns or rifles for sporting, hunting and recreational purposes, and which were designed and manufactured for the purposes of sporting events, hunting and recreational purposes only, and when called upon to provide proof of relief of disability to possess said long gun, Petitioner may present this order as proof that disability has been waived and/or relieved.

*Application of Paulshock,* (Luzerne County Criminal Docket No. 2691 of 1997, filed August 19, 1997).

On August 21, 1999, Paulshock attempted to purchase a long gun for hunting but was prevented from doing so. Following a records check, the PSP determined that, regardless of the order relieving Pennsylvania firearms disability under the Uniform Act, Paulshock's 1960 conviction for crimes punishable by more than two years' imprisonment disabled him from completing the purchase under Section 922(g) of the Federal Act. Paulshock challenged the purchase denial, and, after the PSP confirmed its decision, Paulshock appealed to the OAG. Following a hearing, the ALJ sustained Paulshock's challenge and ruled that common pleas' order exempting Paulshock from firearms disability in Pennsylvania constituted an amendment of his criminal history record that also relieved his firearm disability under the Federal Act.

PSP has appealed these ALJ orders, arguing that neither of the underlying orders entered by common pleas was suffi-

cient to relieve firearm disability under the Federal Act.

Section 922(g) of the Federal Act prohibits any person convicted in any court of a crime punishable for a term exceeding one year from possessing a firearm. However, Section 921 of the Federal Act defines a disqualifying conviction in a manner that excludes from federal disqualification persons whose convictions have been expunged and who have received post-conviction restoration of civil rights. It provides:

Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20).

▮▮▮▮ In the simpler of these cases, Reed obtained an order expunging his prior criminal history. Therefore, under the plain terms of Section 921(a)(20), his 1966 guilty plea "shall not be considered a conviction." Nonetheless, PSP argues that the federal disability continues by challenging the validity of the expungement order because it was entered in the context of a proceeding under Section 6105 rather than under 18 Pa.C.S.A. § 9122, and boldly asserts that the court of common pleas did not mean what it said since it entered an expungement "for the purpose" of removing firearms disabilities.[6] Suffice it to say

---

**6.** It seems abundantly clear to us that common pleas did exactly what it intended to do: enter an order which would have the effect of removing all firearms disabilities, both state and federal. PSP appears to argue that an expungement order entered for the specific purpose of restoring firearms privileges does not have the effect of removing federal firearms disabilities, while an expungement order

entered for other purposes would have that effect. We fail to see the logic in this argument.

We note that Reed has not cross-appealed the OAG's refusal to enforce common pleas' order by requiring PSP to expunge Reed's criminal history, so that matter is not before us. However, we must note with displeasure

that expungement of criminal records lies within the lawful general jurisdiction of the court of common pleas, and the order was clear, uncontested and has long ago become final. Moreover, our Supreme Court has recently held that PSP's statutory duty to maintain criminal records does not give it standing to contest a petition for expungement. *Commonwealth v. J.H.*, 563 Pa. 248, 759 A.2d 1269 (2000). *See also Pennsylvania State Police v. Court of Common Pleas of Bucks County*, 150 Pa. Cmwlth. 338, 615 A.2d 946 (1992), *aff'd*, 533 Pa. 324, 623 A.2d 814 (1993). *A fortiorari*, PSP may not collaterally attack the expungement in this proceeding.

■ We next turn to the Paulshock appeal, which requires us to interpret the term "restoration of civil rights" within the meaning of Section 921(a)(20). The federal circuits widely agree with the view stated in *United States v. Cassidy*, 899 F.2d 543 (6th Cir.1990), that the core civil rights that must be restored in order to satisfy Section 921(a)(20) are the right to vote, the right to sit on a jury and the right to seek and hold public office. Moreover, exemption from federal firearm disability under Section 921(a)(20) requires not only the restoration of civil rights but also a full relief of state firearm disability. *Caron v. United States*, 524 U.S. 308, 118 S.Ct. 2007, 141 L.Ed.2d 303 (1998). As noted above, at Paulshock's request, the restoration of rights effected by the first common pleas order of August 19, 1997 was limited to long guns for sport.

■ This does not, however, end the matter. On March 7, 2001, after briefs were filed but before oral argument, Paulshock sought and obtained a revised order from common pleas that directs full restoration of all civil rights and relieves all firearm disability. The order states:

> Petitioner shall be allowed to purchase, possess and use handguns, in addition to long guns, for sporting, hunting, recreation and any other lawful purposes. Petitioner's rights with respect to the ownership, purchase and possession of firearms are fully restored and the Petitioner may present this Order as proof that any disability in that respect has been relieved.
>
> It is further ordered and decreed that *all* of Petitioner's civil rights are fully restored, including, but not limited to, the right to vote and the right to serve on a jury. Petitioner may also present this Order as proof that any and all disabilities with respect to his civil rights have been fully relieved and that his civil rights have been fully restored.

*Application of Paulshock*, (Luzerne County No. 2691 of 1997, filed March 10, 2001) (emphasis in original). On the basis of this order, Paulshock moved to dismiss the appeal as moot, contending that it satisfied the grounds on which the PSP deemed the prior order insufficient. Indeed,

> It is well established that a judicial determination that is unnecessary to decide an actual dispute constitutes an advisory opinion and has no legal effect. . . . In general, the courts of this Commonwealth may not exercise jurisdiction to decide issues that do not determine the resolution of an actual case or controversy.

*Borough of Marcus Hook v. Pennsylvania Mun. Ret. Bd.*, 720 A.2d 803, 804 (Pa. Cmwlth.1998) (citations omitted). "The law is not concerned with matters that

PSP's blatant refusal to comply with a court order which it has presumptuously taken upon itself to deem ineffective or invalid. The same is true with respect to the second order entered in Paulshock's case, discussed below. We should not have to remind PSP that it has a statutory mandate to enforce court orders, not to second guess them.

have become moot, and the rule is well and wisely established that a court will act only where a real controversy exists." *Fox v. Central Delaware County Auth.*, 475 Pa. 623, 626–27, 381 A.2d 448, 449–50 (1977), quoting *Excellent Laundry Co. v. Szekeres*, 382 Pa. 23, 25, 114 A.2d 176, 177 (1955).

However, while the order of March 7 does obviate the objections raised by PSP to the earlier *order*, it does not resolve the *dispute*. PSP, in argument before this court and in its brief opposing dismissal as moot, continues to vigorously oppose Paulshock's acquisition of a firearm. The entry of the second order by common pleas has not ended the controversy; it has only changed the circumstances and thus caused PSP to shift its argument. Moreover, we are not faced with a situation like that in *Fox* where any continuing dispute involves an entirely different issue from that considered below and presented on appeal. Indeed, in opposing dismissal, PSP urges this court to reverse the OAG's grant of relief on the basis of both common pleas' orders. Therefore, we conclude that this matter is not moot, and should not be dismissed.

■ Nor is there any necessity to remand the matter to the Office of Attorney General for further consideration in light of the new order. The facts are undisputed and are of a character [entry of an order in related court proceedings] of which we may take judicial notice. *See Wyoming Sand & Stone Co. v. Department of Revenue*, 477 Pa. 488, 491 n. 3, 384 A.2d 1193, 1195 n. 3 (1978); *Blevins v. New Garden Township*, 91 Pa.Cmwlth. 207, 496 A.2d

1309 (1985). We are presented with a question of law—the effect of the March 7 order on Paulshock's federal firearms disability—over which we exercise plenary review. The matter has been briefed and fully argued before the court en banc, and we will decide it.

Turning to that issue, the second common pleas order restores all of Paulshock's state civil rights, explicitly including each of those determined to be critical for purposes of Section 921 of the Federal Act. On its face, therefore, the order has the effect of removing Paulshock's federal firearms disqualification. Nonetheless, PSP argues that we should not give effect to the order because common pleas lacks the authority to make a full restoration of civil rights. PSP contends that restoration of civil rights in Pennsylvania, particularly the right to serve on a jury, cannot be effected by common pleas' order but can only result from a gubernatorial pardon,[7] and hence that all orders entered under Section 6105(d)(3) are meaningless because of the federal disability. In order to accept PSP's argument, we would have to find that the General Assembly intended to enact a purposeless statute when it provided in Sections 6105(d)(1) and 6105(d)(3) that gun privileges could be restored by common pleas to persons other than those who have been pardoned. We decline to construe a statutory scheme in such a manner as to render part of it a nullity. Rather, we hold that common pleas has the authority to fully restore civil rights in order to effectuate a Section 6105(d) order.

■ Accordingly, the orders of the OAG are affirmed.[8]

---

7. *See* 42 Pa.C.S. § 4502, which provides that a person convicted of crime punishable by imprisonment for more than one year is not qualified to serve on a jury if not granted a pardon or amnesty.

8. We may affirm an order for any reason, regardless of the rationale relied upon below, so long as the basis for our decision is clear on the record. *See Rabenold v. Zoning Hearing Bd. of Palmerton*, 777 A.2d 1257, 1263, n. 7 (Pa.Cmwlth.2001).

*O R D E R*

AND NOW, this 20th day of November, 2001, the order of the Administrative Law Judge for the Office of Attorney General in the above captioned matter is hereby AFFIRMED.

*O R D E R*

AND NOW, this 20th day of November, 2001, the order of the Administrative Law Judge for the Office of Attorney General in the above captioned matter is hereby AFFIRMED.